**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

REBECCA A. HUNTER,

                Plaintiff,

v.                                CIVIL ACTION NO.  2:16-cv-04018

OTIS ELEVATOR COMPANY,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Otis Elevator Company's motion for summary judgment.[1] (ECF No. 32.) For the reasons discussed more fully below, the Court **GRANTS** Otis Elevator's motion.

*I. BACKGROUND*

Otis Elevator Company ("Otis Elevator") manufactures, installs, and maintains elevators and escalators throughout the United States. (ECF No. 33 at ¶ 1.) Plaintiff, Rebecca Hunter ("Hunter"), was employed by Otis Elevator beginning in February of 2010 as an administrative assistant at Otis Elevator's Big Chimney, West Virginia location.[2] (ECF No. 35 at 1.) Hunter

---

[1] Also pending before the Court are Plaintiff's Motion in Limine to Exclude Improper Character Evidence, (ECF No. 53), Defendant's Motion to Bifurcate Trial, (ECF No. 54), Defendant's Motion in Limine Regarding the Health of Plaintiff's Son, (ECF No. 55), and Defendant's Motion in Limine Regarding Plaintiff's Lost Wages After September 2016. (ECF No. 56.) As this opinion resolves the case, the Court **DENIES AS MOOT** these motions.

[2] Otis Elevator's Big Chimney office is a small, satellite office that is part of the larger West Virginia Greater Branch Office ("GBO"), which is part of Otis Elevator's Southern Region. (ECF No. 33 at ¶ 3.)

states that her duties included lifting heavy boxes and operating a forklift. (*Id.*) However, Otis Elevator states that Hunter was never asked to operate a forklift. (ECF No. 47 at 8.)

In 2013, Otis Elevator's Vice President, Chris Doot ("Doot"), implemented the Financial Shared Services ("FSS") program, which was designed to consolidate administrative functions across all of Otis Elevator's branches to a centralized group in Florida. (ECF No. 33 at ¶ 5.) In the fall of 2014, Doot decided to transition the West Virginia GBO to FSS. (*Id.* at ¶ 6.) Doot and several other supervisors and managers rated the performance of all administrative assistants in the Southern Region using a multi-tier review process. (*Id.* at ¶ 7.) Otis Elevator states that Hunter's rating was among the lowest in the region, thus prompting their decision to terminate Hunter's positon and lay off Hunter instead of reassigning her to a different position. (*Id.* at ¶¶ 7–8.) Otis Elevator planned to inform Hunter of her layoff in January of 2015 and accordingly prepared a severance package. (*Id.*) However, due to a vacancy in the General Manager position at the West Virginia GBO, Otis Elevator decided to postpone that branch's transition to FSS until it filled the General Manger position as whoever occupied that position would be responsible for implementing the FSS changes. (*Id.* at ¶ 9.)

In May of 2015, Otis Elevator hired Randolph Davis ("Davis") to fill the General Manager position. (*Id.* at ¶ 10.) Before he officially assumed the position, Davis was told that Hunter would be laid off as part of the FSS changes. (*Id.*) Shortly after Davis assumed his positon, Hunter informed Davis that she was 10 weeks pregnant. (ECF No. 35 at 1.) Hunter's doctor subsequently placed her on light duty restrictions.[3] (*Id.*)

---

[3] Otis Elevator states that it does not have any record of being informed of Hunter's light duty restrictions. (ECF No. 47 at 2.)

On June 17, 2015, Hunter emailed Davis to inform him that she needed time off due to complications with her pregnancy. (*Id.* at 1–2.) On June 24, 2015, Davis emailed Melanie Mack ("Mack") in Human Resources asking for guidance on how to handle Hunter's numerous absences and expressing concern over the veracity of Hunter's excuses for these absences. (*See* ECF No. 35-2 at 2.) Mack responded stating that Davis should require Hunter to provide a doctor's note following appointments but that he should "[b]e mindful that she is pregnant and this will require many more appointments than would otherwise be required." (*See* ECF No. 35-3 at 2.)

On September 23, 2015, Hunter's doctor placed her on temporary bedrest. (ECF No. 35 at 2.) Hunter returned from bedrest six days later and emailed Davis inquiring about the future of her position after the imposition of FSS. (ECF No. 33 at ¶ 12.) Davis responded to Hunter stating that it was "business as usual until they tell us otherwise." (ECF No. 32-11 at 2.) Davis also emailed Beth Johnson ("Johnson") in Human Resources and stated that Hunter was asking for a layoff date. (ECF No. 35 at 2 (citing ECF No. 35-6 at 16 (Johnson Dep.)).) Johnson stated in her deposition that she followed up with the Headquarters who informed her that the FSS plan indicated that Hunter's position would be eliminated in 2015. (ECF No. 35-6 at 30–31.) Accordingly, Johnson told Davis to proceed with Hunter's termination, which they agreed would occur on November 3, 2015. (*Id.* at 29–31; ECF No. 35-7 at 2 (Email Regarding Restructuring).)

On October 29, 2015, Hunter informed Davis that her doctor had again placed her on temporary bedrest and she therefore would not be in the office for the remainder of the week. (*Id.* at ¶ 14.) Thus, on November 4, 2015, Otis Elevator decided to inform Hunter of her lay off by telephone instead of in person. (*Id.*) Davis and Mack informed Hunter that it had been decided several months earlier that her position would be terminated as a result of the FSS plan to

consolidate administrative duties. (*Id.*) They also informed Hunter that her termination date would be delayed until she was medically cleared to return to work. (*Id.*) Hunter received full pay and benefits from October 30, 2015 through November 18, 2015 because of her accrued sick days. (*Id.* at ¶ 15.)

Otis Elevator states that Hunter's doctor released her to return to work on December 25, 2015, but because of a new parental leave policy that allowed employees to be eligible for four weeks of parental leave, Otis Elevator delayed Hunter's effective date of termination so she could participate in this new policy. (*Id.* at ¶ 16.) Hunter states that she advised Otis Elevator in January of 2016 that she was able to return to work and that Otis Elevator informed her that she would be terminated on January 22, 2016. (ECF No. 35 at 5.) Accordingly, on January 22, 2016, Otis Elevator's Senior Regional Human Resources Manager mailed Hunter a severance package. (ECF No. 33 at ¶ 17.) Hunter also received an additional two weeks' full pay and retained her medical insurance benefits through February 19, 2016. (*Id.*)

Since laying off Hunter, Otis Elevator states that it has not hired any administrative assistants for the West Virginia GBO nor has it posted any job openings for an administrative assistant in that region. (*Id.* at ¶ 18.) Otis Elevator also states that, since 2016, it has laid off eighteen additional employees, with two of the eighteen deciding to resign or retire, as a result of the FSS restructuring.[4] (*Id.* at ¶ 19.) Some of these layoffs were delayed due to "start up issues and resistance at the branch level."[5] (*Id.*)

---

[4] Hunter states that, in response to interrogatories, Otis Elevator only identified two individuals who were affected by the FSS restructuring and that only months later did Hunter supplement its responses with additional individuals. (ECF No. 35 at 4.)
[5] Hunter appears to use the discrepancy in the layoff dates and the lack of explanation for why her termination date was chosen as support for her claim that she was fired due to her pregnancy. (*See* ECF No. 35 at 4–5.) However, Otis Elevator points out that the termination dates are only months apart. (*See* ECF No. 47 at 10.)

On March 21, 2016, Hunter filed this action in Kanawha County Circuit Court against Otis Elevator alleging sex discrimination in violation of the West Virginia Human Rights Act ("HRA"), common law wrongful discharge, and violations of the West Virginia Pregnancy Workers' Fairness Act ("PWFA"). (*See* ECF No. 1-1 at 4–11 (Compl.).) Otis Elevator subsequently removed this action to this Court on April 28, 2016. (*See* ECF No. 1.) On May 22, 2017, Otis Elevator filed the present motion for summary judgment. (ECF No. 32.) Hunter filed a timely response to the motion. (ECF No. 35.) Following Hunter's response, the Court gave the parties time to conduct discovery on an unrelated motion and enlarged the reply deadline. (*See* ECF No. 38; ECF No. 39.) Pursuant to the enlarged deadline, Otis Elevator filed its reply on December 8, 2017. (ECF No. 47.) The motion is now fully briefed and ripe for adjudication.

## II.    *LEGAL STANDARD*

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. That rule provides, in relevant part, that summary judgment should be granted if "there is no genuine issue as to any material fact." Summary judgment is inappropriate, however, if there exist factual issues that reasonably may be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *News & Observer Publ. Co. v. Raleigh–Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). When construing such factual issues, the Court must view the evidence "in the light most favorable to the [party opposing summary judgment]." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The moving party may meet its burden of showing that no genuine issue of fact exists by use of "depositions, answers to interrogatories, answers to requests for admission, and various documents submitted under request for production." *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984). Once the moving party has met its burden, the burden shifts to the nonmoving party to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If a party fails to make a sufficient showing on one element of that party's case, the failure of proof "necessarily renders all other facts immaterial." *Id.* at 323.

"[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 256. "The mere existence of a scintilla of evidence" in support of the nonmoving party is not enough to withstand summary judgment; the judge must ask whether "the jury could reasonably find for the plaintiff." *Id.* at 252.

### III. DISCUSSION

In her Complaint, Hunter asserts that Otis Elevator violated the HRA and the PWFA by allegedly terminating her because she was pregnant. (*See* ECF No. 1-1 at ¶¶ 15–21, 30–34.) Hunter also pled, in the alternative to her HRA claim, a common law wrongful termination claim (Count II) because the HRA only applies to businesses that employ at least twelve individuals. (*Id.* at ¶¶ 22–29.)

In its motion for summary judgment, Otis Elevator argues that Hunter's HRA claim should fail because she cannot establish a prima facie case of pregnancy discrimination. (ECF No. 33 at 1.) Otis Elevator further argues that Hunter has not asserted a cognizable PWFA claim. (*Id.*)

Lastly, Otis Elevator argues that the alternative claim in Count II should be dismissed because Otis Elevator did employ at least twelve individuals. (*Id.* at n.1) The Court will address each of Otis Elevator's arguments in turn.

### A. Hunter's HRA Claim[6]

Otis Elevator argues that Hunter cannot make out a prima facie case under the HRA because she does not offer enough evidence for the Court to find that Otis Elevator discriminated against her. (*Id.*) Otis Elevator asserts that Hunter only cites in support of her claim the fact that she was pregnant when she was officially terminated and the fact that Davis, who she alleges was frustrated with her, made the decision when to terminate her. (*Id.*) Otis Elevator further argues that, even if Hunter made a prima facie case for pregnancy discrimination, Otis Elevator had a non-discriminatory, non-pretextual reason for terminating Hunter. (*Id.* at 16.)

In her response, Hunter argues that Davis fired her due to frustrations with her pregnancy related absences. (ECF No. 35 at 8.) Specifically, Hunter states that "Davis decided he no longer had a need for [her] due to her restrictions and light duty requirements" and was aware that Hunter's position was previously identified for elimination. (*Id.* at 8–9.) Hunter further asserts

---

[6] As stated above, Hunter also asserted a wrongful discharge claim in the alternative to her HRA Claim. (*See* ECF 1-1at ¶ 27 (Compl.) ("[I]n the event defendant Otis Elevator does not employ twelve or more individuals, the Legislature has specifically set forth the public policy of the State of West Virginia and no employer, regardless of size, or individual may violate said public policy.")) As it is undisputed that Otis Elevator employed at least twelve individuals at all relevant times, the Court **FINDS** that the HRA applies to Otis Elevator. *See* W. Va. Code § 5-11-3(d). (*See also* ECF No. 33 at n.1.) Thus, the Court **GRANTS** summary judgment to Otis Elevator on Hunter's wrongful discharge claim. *See Burgess v. Gateway Commc'ns Inc.*, 984 F. Supp. 980, 983 (S.D. W. Va. 1997) ("A victim of unlawful discrimination is limited to the remedy afforded him under the [HRA], a claim [plaintiff] has pleaded."); *Taylor v. City Nat'l Bank*, 642 F. Supp. 989, 998 (S.D. W. Va. 1986) ("In essence, the [p]laintiff claims that the [d]efendant, in allegedly retaliating against the [p]laintiff, violated a substantial public policy of West Virginia—the right of an employee to complain of discriminatory treatment. The [d]efendant argues that any common law action is preempted by the [HRA] and Title VII, that is, that the [p]laintiff is limited to the statutory remedy provided by those two statutes. The [d]efendant's argument is well taken. This [c]ourt has previously decided that a party may not bring a . . . tort-based action to gain redress for violations of the [HRA].").

that the plan to eliminate her positon had "never come to fruition" and her position may never have been terminated had Otis Elevator not discriminated against her. (*Id.* at 9.)

The HRA prohibits employers from discriminating against qualified individuals because of that individual's sex. *See* W. Va. Code § 5-11-9(a). The Supreme Court of Appeals of West Virginia has held that "discrimination based upon pregnancy constitutes illegal sex discrimination under the [HRA]." *Frank's Shoe Store v. W. Va. Human Rights Comm'n*, 365 S.E.2d 251, 257 (W. Va. 1986). "Discrimination claims brought under the HRA are governed by the burden-shifting framework of Title VII of the Civil Rights Act, as set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973)." *Larry v. Marion Cty. Coal Co. et al.*, No. 1:15-CV-212, 2018 WL 64837, at *3 (N.D. W. Va. Jan. 31, 2018) (citing *Shepherdstown Volunteer Fire Dep't v. State ex rel. W. Va. Human Rights Comm'n*, 309 S.E.2d 342, 352 (W. Va. 1983) (reaffirming use of the *McDonnell Douglas* standard in West Virginia)). Thus, once a plaintiff has established a prima facie case for discrimination, the burden shifts to the employer to offer a non-discriminatory reason for the adverse decision. *See Conaway v. E. Associated Coal Corp.*, 358 S.E.2d 423, 430 (W. Va. 1986).

To establish a prima facie case of pregnancy discrimination under the HRA, a plaintiff must show the following: "(1) [t]hat the plaintiff is a member of a protected class; (2) [t]hat the employer made an adverse decision concerning the plaintiff; and (3) [b]ut for the plaintiff's protected status, [her pregnancy], the adverse decision would not have been made." *Miller v. Fed. Exp. Corp.*, No. 2:12–cv–03461, 2014 WL 2117098, at *3 (S.D. W. Va. May 21, 2014) (citing *Conaway*, 358 S.E.2d at 429). To satisfy the third element, a plaintiff must "show some evidence which would sufficiently link the employer's decision and the plaintiff's status as a member of the

protected class so as to give rise to an inference that the employment decision was based on an illegal discriminatory criterion." *Miller v. Terramite Corp.*, 114 F. App'x 536, 541 (4th Cir. 2004) (quoting *Conaway*, 358 S.E.2d at 429–30). The Supreme Court of Appeals of West Virginia noted this evidence may include, "[1] an admission by an employer, [2] a case of unequal or disparate treatment between members of the protected class and others, [3] by elimination of the apparent legitimate reasons for the decision, or [4] statistics in a large operation which show that members of the protected class received substantially worse treatment than others." *Conaway*, 358 S.E.2d at 430.

Here, Hunter satisfies the first two elements of the prima facie case as it is undisputed that Hunter was pregnant when she was terminated and that the termination was an "adverse decision" concerning Hunter. However, Otis Elevator argues that Hunter cannot satisfy the third element— that but for her pregnancy, Otis Elevator would not have terminated her. (ECF No. 33 at 14.) Hunter produced the following evidence in support of her claim for discrimination: she was pregnant when Otis Elevator issued the termination date for her position, Davis's emails to Human Resources requesting advice on how to handle Hunter's absences, and depositions and interrogatories that Hunter states indicate that Davis was the one who decided to terminate her position [7] and that Otis Elevator's reversal of their answer that Davis was responsible for terminating Hunter's position.[8] (*See* ECF No. 35 at 8–9; *see also* ECF No. 32-2 at 166 (Hunter Dep.).)

[7] Hunter specifically refers to Johnson's deposition in which Johnson states that she was not aware that Hunter's position was scheduled for termination until Davis emailed her stating that Hunter was asking for a layoff effective date and that "[Davis] felt he needed to consolidate [Hunter's] position." (*See* ECF No. 35 at 2-3 (quoting ECF No. 35-6 at 15–16 (Johnson Dep.)).) Hunter also refers the Court to interrogatories from Otis Elevator and Davis's deposition in which Davis stated that he was concerned that Hunter's position would never be terminated because they needed the position consolidated for the FSS. (ECF No. 34 at 3–4 (citing ECF No. 35-8 at 28, 47 (Davis Dep.)).)

[8] Citing Otis Elevator's first set of interrogatories and Davis's deposition, Hunter asserts that Davis admitted that he

9

Taken as a whole, Hunter offers little evidence in support of her pregnancy discrimination claim. Compare the present case with *Larry*, 2018 WL 64837, at *5, in which the court found that plaintiff had satisfied the third element when she showed that she had positive evaluations and was recently promoted, but she was chosen for layoff soon after she began taking lactation breaks at work while a newly promoted male employee in the same division was retained. Here, it is undisputed that Hunter had negative evaluations, which Otis Elevator states prompted it to lay off Hunter instead of reassigning her. (*See* ECF No. 32-2 at 162–63 (Hunter Dep.); ECF No. 32-7 at ¶ 5 (Doot Aff.).) Furthermore, it is also undisputed that Otis Elevator has not hired anyone to Hunter's positon since laying off Hunter. (*See* ECF No. 32-2 at 109 (Hunter Dep.); ECF No. 32-5 at ¶ 7 (Davis Aff.).) Accordingly, the Court **FINDS** that Hunter has not made a sufficient showing that Otis Elevator's decision to terminate her was sufficiently linked to her pregnancy so as to give rise to an inference that Otis Elevator's would not have terminated her but for her pregnancy.

Furthermore, even if Hunter did establish a prima facie case, the Court **FINDS** that Otis Elevator has satisfied its burden of establishing a legitimate, non-discriminatory reason for terminating Hunter. Otis Elevator asserts that Hunter was terminated in accordance with the FSS plan, which was decided and implemented before Hunter was pregnant and before Davis was hired. (*See* ECF No. 33 at 16–19.) In support of its argument, Otis Elevator cites interrogatories, depositions, and documents that show that following: that Otis Elevator made the decision to implement the FSS restructuring plan in 2013, that Otis Elevator decided that the West Virginia

---

was part of the decision to implement the FSS and terminate Hunter's position. (ECF No. 35 at 3.) However, Otis Elevator states that Davis and Johnson were not involved in the decision, only in the implementation, of the plan that terminated Hunter's positon. (ECF No. 33 at ¶ 13; ECF No. 47 at 6–7.)

GBO would be the first office to move to the FSS model, that the decision to terminate Hunter's position was made in 2014 after she ranked the lowest in a multi-tier performance evaluation, that Otis Elevator prepared Hunter's severance package in January of 2015, all of which occurred before Hunter became pregnant and before Davis was hired, and that the emails between Davis and Human Resources show that Hunter's position had already been slated for termination and that Davis had to request the termination date. (*See* ECF No. 35 at 16–17; ECF No. 47 at 6–7; ECF No. 47-1 (Severance Package); ECF No. 47-5 at 18–19, 27–28 (Davis Dep.)).)

Hunter fails to show that the "legitimate, nondiscriminatory reason" given for her termination—poor performance and restructuring—were pretextual. *See Skaggs v. Elk Run Coal Co.*, 479 S.E.2d 561, 583 (W. Va. 1996) ("To get to the jury, the employee must offer sufficient evidence that the employer's explanation was pretextual to create an issue of fact.") Hunter does not dispute that Otis Elevator, in accordance with the FSS plan, slated her positon for termination in 2014. (*See* ECF No. 35 at 9; ECF No. 32-2 at 159–60 (Hunter Dep.)). Hunter merely asserts that a jury could find if she had been allowed to continue to work the restructuring may never have occurred. (*See* ECF No. 35 at 9–10.) She offers as evidence of this assertion the fact that she was the first administrative assistant to be terminated and that, initially, Otis Elevator did not identify who made the decision to terminate Hunter's position in November of 2015. (*See id*.) Thus, even if the Court took as true Hunter's assertions that Davis was frustrated with her, the undisputed record shows that her positon was slated for termination before Davis was hired and shows that Davis had to email Human Resources for Hunter's termination date and did not unilaterally decide it. This is not sufficient to show that Otis Elevator's reason for terminating

Hunter's position was pretextual or that Hunter's pregnancy was a motivating factor at all in Otis Elevator's decision.

Because Hunter cannot show that a discriminatory motive entered into Otis Elevator's decision to terminate her position, it is unnecessary for the Court to reach Hunter's mixed motive argument. *See Skaggs*, 479 S.E.2d at 585 ("[W]hen a plaintiff proves that a discriminatory motive entered into an employment decision, the burden of persuasion then shifts to the defendant to show that the same decision would have been made in the absence of the discriminatory motive.") Accordingly, the Court **GRANTS** Otis Elevator's motion for summary judgment with regard to Hunter's HRA claim.[9]

### B. Hunter's PWFA Claim

In her Complaint, Hunter alleges that Otis Elevator violated the PWFA by refusing to provide her reasonable accommodations during her pregnancy. (ECF No. 1-1 at ¶ 31.) Otis Elevator argues that Hunter did not properly assert a PWFA claim because that statute only applies to claims for wrongful denial of pregnancy-related accommodations and not claims of unlawful termination due to pregnancy discrimination. (ECF No. 33 at 19.)

The PFWA states, in relevant part, the following:

It shall be an unlawful employment practice for a covered entity to . . . [n]ot make reasonable accommodations to the known limitations related to the pregnancy, childbirth, or related medical conditions of a job applicant or employee, following delivery by the applicant or employee of written documentation from the applicant's or employee's health care provider that specifies the applicant's or employee's limitations and suggesting what accommodations would address those limitations, unless such covered entity can demonstrate that the accommodation

---

[9] Otis Elevator raises for the first time in its reply the argument that Plaintiff's HRA claim, as stated in her response to the present motion, is barred because it contradicts her sworn deposition testimony in an attempt to "sidestep summary judgment." (ECF No. 47 at 4.) The Court does not agree with this interpretation of Hunter's response and therefore rejects this argument. As this argument was not raised in the initial motion, the Court's granting of the motion does not reflect the Court's validation of this argument.

would impose an undue hardship on the operation of the business of such covered entity . . . .

W. Va. Code § 5-11B-2(1).  The plain language of the statute shows that it only applies to an employer's refusal to provide reasonable accommodations for pregnancy-related conditions.  *See Larry*, 2018 WL 648371, at *3 (stating that the PWFA "explicitly requires employers to reasonably accommodate their employees' 'known limitations related to pregnancy, childbirth, or related medical conditions'" (quoting § 5-11B-2(1))).

Here, Hunter admitted in her deposition that she did not request from Otis Elevator any pregnancy-related accommodations other than requests for leave time for doctor's appointments and bedrest.  (*See* ECF No. 32-2 at 84 (Hunter Dep.).)  To the extent Hunter argues that her allegations that her requests for time off due to complications with her pregnancy angered Davis and prompted him to terminate is actionable under the PWFA, the Court does not agree.  That reading of the PWFA is contrary to the text of the statute.  Furthermore, Hunter does not dispute that Otis Elevator never denied her requests of time off due to her pregnancy complications.  (*See* ECF No. 32-2 at 83–84 (Hunter Dep.).)  As such, Hunter has failed to show that there are genuine issues of material fact with regard to her PWFA claim.  Accordingly, this Court **GRANTS** Otis Elevator's motion for summary judgment with regard to Hunter's PWFA claim.

## IV.    *CONCLUSON*

Accordingly, the Court **GRANTS** Otis Elevator's motion for summary judgment.  (ECF No. 32.)  A separate Judgement Order will be entered reflecting the Court's ruling.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:       February 21, 2018

_____

THOMAS E. JOHNSTON, CHIEF JUDGE